```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF OREGON

DANNY ROMERO,                    )
                                 )
               Plaintiff,        )
                                 )    No.  CV-07-6083-HU
      v.                         )
                                 )
DR. VARGO, STEVE SHELTON,        )
DAVID GRAFF, TED RANDALL, DR.    )   FINDINGS & RECOMMENDATION
BECKER,                          )
                                 )
               Defendants.       )
_____)

Danny Romero
Oregon State Penitentiary
2605 State Street
Salem, Oregon 97310

     Plaintiff Pro Se

John R. Kroger
ATTORNEY GENERAL
Joseph G. Groshong
ASSISTANT ATTORNEY GENERAL
Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

     Attorney for Defendants

HUBEL, Magistrate Judge:
```

Plaintiff Danny Romero, an inmate at Oregon State Penitentiary (OSP), brings this 42 U.S.C. § 1983 action against defendants Dr.

1 - FINDINGS & RECOMMENDATION

John M. Vargo, D.O., Oregon Department of Corrections Health Services Administrator Steve Shelton, M.D., OSP Health Services Manager Ted Randall, OSP Nurse Manager David Graff, and Dr. Jerry Becker, M.D. Plaintiff contends that defendants violated the Eighth Amendment by failing to properly treat his foot deformity.

Defendants move for summary judgment. I recommend that the motion be granted in part and denied in part. Plaintiff moves for appointment of an expert witness. I recommend that the motion be granted.

## BACKGROUND

Plaintiff suffers from two conditions that affect his left foot. Becker Affid. at ¶ 4. One is a "Halux Valgus" deformity which Dr. Becker explains causes plaintiff's large great toe to turn to the outside of his foot, or splay. Id. The treatment, or alleged lack thereof, for this condition is the basis of plaintiff's lawsuit.[1]

The medical records show that on March 4, 2004, Dr. Becker examined plaintiff's foot. Attmt 1 to Becker Affid. at p. 2. Dr. Becker wrote in his March 4, 2004 progress note that the ideal treatment for plaintiff would be a carbon fiber plate in his left shoe with a metatarsal pad. Id. He added, however, that a stiff sole pair of shoes with a metatarsal pad would "probably suffice." Id. Dr. Becker requested that plaintiff be scheduled to return to

---

[1] The other condition is arthritis in his left great toe, which Dr. Becker states is not a severe condition. Id. Plaintiff does not appear to challenge that assertion and plaintiff's allegations and summary judgment materials are all addressed to the shoes, insert, and pad prescribed by Dr. Becker for the Halux Valgus condition, not the arthritis.

2 - FINDINGS & RECOMMENDATION

1  see him once he received the items ordered, to be sure they all
2  fit.  Id.  In a separate physician's order written on that date,
3  Dr. Becker prescribed a rigid sole shoe or any shoe with a carbon
4  fiber sole plate to limit the motion of the great toe of the left
5  foot.  Pltf's Exh. 1.  He also prescribed an independent metatarsal
6  pad for the left forefoot, for one year.  Id.

7  Plaintiff sent kytes inquiring about the shoes on March 26,
8  2004, and March 29, 2004.  Attmt 2 to Vargo Affid. at p. 43.  On
9  May 22, 2004, plaintiff sent another kyte inquiring about the
10 status of the shoes.  Attmt 1 to Becker Affid. at p. 3.  On June
11 18, 2004, plaintiff received shoes from the prison canteen.  Id.

12 On July 23, 2004, plaintiff sent a kyte regarding the foot pad
13 ordered by Dr. Becker.  Id.  He was told that the Therapeutic Level
14 of Care (TLC) Committee had denied the foot pad and had recommended
15 work boots with hard soles.  Id.; see also Attmt 2 to Vargo Affid.
16 at p. 83 (July 8, 2004 memorandum from Dr. Vargo noting that the
17 treatment proposed was a metatarsal pad and that the TLC
18 recommended work boots instead; no mention of carbon fiber insert).

19 Dr. Vargo states that he considered Dr. Becker's
20 recommendation, but based on his examination of plaintiff, Dr.
21 Vargo chose a more conservative approach and ordered work boots
22 with a hard sole.  Vargo Affid. at ¶ 7; Pltf's Exh. 2 (showing July
23 15, 2004 order from Dr. Vargo for issuance of work boots with a
24 hard sole, for one year).

25 On August 9, 2004, plaintiff requested to see Dr. Becker
26 because his foot hurt in the hard sole shoes.  Attmt 1 to Becker
27 Affid. at p. 4.  Dr. Becker examined plaintiff on August 19, 2004,
28 and noted plaintiff's complaint that the current shoes were not

3 - FINDINGS & RECOMMENDATION

1 comfortable. Id. Dr. Becker described the shoes plaintiff was
2 wearing as seamless soft leather toe box shoes with thick soles.
3 Id. In the "prescription" section of his progress note, Dr. Becker
4 states "see first order[,] needs metatarsal pad." Id. Dr. Becker
5 also wrote a separate order on that date for the metatarsal pad
6 and for New Balance extra-wide shoes for splay foot. Id. at p. 1. He
7 noted that this was an indefinite order. Id.
8    On September 9, 2004, plaintiff sent a kyte inquiring about
9 the shoes and metatarsal pad recommended by Dr. Becker. Attmt 2 to
10 Vargo Affid. at p. 47. He was told that he received the shoes in
11 June 2004, and that the TLC Committee had denied the metatarsal
12 pad. Id.
13    On October 26, 2004, plaintiff was given an "OK" to purchase
14 wide shoes at the canteen. Attmt 2 to Vargo Affid. at p. 13. On
15 November 2, 2004, a second order requiring that he be issued work
16 boots with hard soles for one year, was entered. Id. On November
17 17, 2004, plaintiff sent a kyte regarding the order for shoes and
18 boots. Id. at p. 48. In response, he was sent a copy of
19 instructions to obtain a package authorization to have the
20 shoes/boots sent in. Id.
21    On January 6, 2005, plaintiff sent a kyte requesting work
22 boots. Id. at p. 49. He was told to obtain work boots through the
23 clothing room. Id. On January 21, 2005, plaintiff signed an
24 acknowledgment in which he states that he "willingly accept[s] this
25 pair of Reebok I3 Phoenix Low shoes (size 9) fulfilling my medical
26 need for shoes. The cost center has agreed to meet the payment
27 cost." Pltf's Exh. 51.
28    On February 1, 2006, plaintiff sent a kyte requesting

4 - FINDINGS & RECOMMENDATION

authorization for shoes. Attmt 2 to Vargo Affid. at p. 59. He was told that the order was now over one year old and he needed a new order. Id. On February 8, 2006, Dr. Vargo examined plaintiff and noted that plaintiff requested that Dr. Vargo write an order that the Department of Corrections pay for plaintiff's shoes. Id. at p. 60. Dr. Vargo told him he could not write that order. Id. On March 8, 2006, plaintiff sent a kyte asking when shoes would be ordered for him. Id. The record shows that documents were sent to Dr. Vargo for review. Id.

On May 3, 2006, plaintiff was examined by someone whose signature is illegible and not identified. Id. at p. 61. Plaintiff requested a metatarsal pad for his left foot. Id. The practitioner indicated that follow up with Dr. Vargo would occur. Id.

Plaintiff requested to see Dr. Becker on August 26, 2006. Attmt 1 to Becker Affid. at p. 5. He complained of ongoing foot pain. Id. Dr. Becker examined plaintiff on September 29, 2006. Id. He ordered extra-wide shoes for splay feet, a long arch support with metatarsal pad, and a carbon fiber plate to limit the range of motion of the great toe. Id. at p. 6.

On October 23, 2006, plaintiff sent a kyte regarding the order for the shoes and arch supports. Id. He was told that the TLC Committee recommended that he get extra-wide shoes from the clothing room, and arch supports from the canteen. Id.; see also Attmt 2 to Vargo Affid. at p. 84 (Oct. 5, 2006 memorandum from Dr. Vargo noting the proposed treatment of extra-wide shoes, long arch support with "met pads" and carbon fiber plate to limit great toe motion, and noting TLC Committee's recommendation that plaintiff

5 - FINDINGS & RECOMMENDATION

obtain extra wide shoes from clothing supply, purchase arch supports from the canteen, lose weight, and take non-steroidal anti-inflammatory medications (NSAIDs), if he had pain).

On January 11, 2007, plaintiff saw Dr. Becker for a different complaint. Attmt 2 to Vargo Affid. at p. 66. In a separate order on that date, Dr. Becker noted: "see 9-29-06 foot order for carbon fiber plate & long arch support [with] met pad." Id. at p. 18.

On August 9, 2007, Dr. Becker saw plaintiff again and noted that plaintiff reported that he was still waiting for shoe modifications. Attmt 1 to Becker Affid. at p. 7. His current shoes had worn out and his symptoms were unchanged. Id. Plaintiff was given a metatarsal pad that day. Id. Dr. Becker noted that plaintiff still needed extra-wide shoes and a carbon fiber insert, or rigid sole to limit the great toe motion. Id. Dr. Becker stated that a carbon fiber plate could be used in multiple shoes and was recommended as a way to avoid a Keller bunionectomy. Id. In a separate order on that date, Dr. Becker ordered extra-wide shoe toe box with carbon fiber insole, and a metatarsal pad for indefinite use. Pltf's Exh. 7, 8.

On August 28, 2007, plaintiff was told that his carbon fiber shoe insert was approved. Attmt 1 to Becker Affid. at p. 8; see also Attmt 2 to Vargo Affid. at p. 85 (Aug. 23, 2007 memorandum from Dr. Vargo noting the proposed treatment of a carbon fiber plate and noting the TLC Committee's approval if approved by security). On September 6, 2007, he sent a kyte requesting copies of Dr. Becker's medical notes and prescriptions for plaintiff's foot problems. Id. at p. 111. Plaintiff also requested copies of the TLC Committee's decision regarding Dr. Becker's orders. Id.

6 - FINDINGS & RECOMMENDATION

1   On January 7, 2008, plaintiff acknowledged receiving a custom
2 made carbon fiber plate.  Pltf's Exh. 213.
3   On March 3, 2008, plaintiff complained that he was unable to
4 purchase shoes to fit his carbon fiber insole and requested that
5 the Department of Corrections purchase shoes for him.  Attmt 1 to
6 Becker Affid. at p. 9.  Dr. Becker examined plaintiff on March 6,
7 2008, and noted that plaintiff's foot was too tight in the toe box
8 with the carbon fiber insert.  Id.  If he took out the insole, it
9 worked well for the toe pain, but he also needed the cushion.  Id.
10 Dr. Becker ordered plaintiff to have shoes with an extra deep toe
11 box to accommodate the carbon fiber plate in order to avoid
12 surgery.  Id.; see also Pltf's Exh. 9 (separate order dated March
13 6, 2008, ordering extra depth toe box shoe to accommodate carbon
14 fiber plate, and further ordering plaintiff be considered medically
15 idle or placed in sitting work until he received the extra depth
16 shoe).
17   On that same date, the TLC Committee rejected the purchase of
18 shoes to fit the carbon fiber insole and indicated that plaintiff
19 could obtain extra-wide shoes from the canteen.  Attmt 2 to Vargo
20 Affid. at p. 86.  On May 13, 2008, plaintiff acknowledged receiving
21 a pair of Performance Walker orthopedic shoes, size 9W.  Pltf's
22 Exh. 213.  Plaintiff complains that these are too large for him.

                              STANDARDS

24   Summary judgment is appropriate if there is no genuine issue
25 of material fact and the moving party is entitled to judgment as a
26 matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the
27 initial responsibility of informing the court of the basis of its
28 motion, and identifying those portions of "'pleadings, depositions,

7 - FINDINGS & RECOMMENDATION

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

8 - FINDINGS & RECOMMENDATION

DISCUSSION

I.  Eighth Amendment Standards

To succeed on a section 1983 claim for inadequate medical treatment, plaintiff must demonstrate that defendants showed "deliberate indifference to [his] serious medical needs[.]" Estelle v. Gamble, 429 U.S. 97, 104 (1976); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000). Plaintiff must show that he was confined "under conditions posing a risk of objectively, sufficiently serious harm and that the officials had a sufficiently culpable state of mind in denying the proper medical care." Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted).

The analysis possesses two components:  (1) an objective inquiry whether the prisoner's medical condition is sufficiently serious. See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Second, the prisoner must demonstrate that subjectively, the prison official acted with a culpable state of mind. Wilson, 501 U.S. at 298-99; Toguchi, 391 F.3d at 1057.

Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment. Lopez, 203 F.3d at 1131. Deliberate indifference is evidenced only when the official knows of and disregards an excessive risk to inmate health or safety. Clement, 298 F.3d at 904. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" Lolli v. County of Orange, 351 F.3d 410,

9 - FINDINGS & RECOMMENDATION

419 (9th Cir. 2003) (internal quotation omitted).

Mere negligence is insufficient for liability. <u>Clement</u>, 289 F.3d at 904. Rather, the prisoner must show that the course of treatment undertaken was medically unacceptable under the circumstances, and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health. <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996). A difference of opinion does not establish deliberate indifference. <u>Id.</u>

II. Discussion

In the Amended Complaint, filed by plaintiff on July 12, 2007, plaintiff contends that Dr. Vargo has "deliberately and continuously" denied orders from Dr. Becker to have plaintiff's "medically recommended shoes [fitted] with [metatarsal] pads[.]" Am. Comp. at ¶ 4. Without the recommended shoes and pads, plaintiff experiences "imminent pain and disfigurement[.]" <u>Id.</u> Plaintiff further alleges that without the shoes and pads, he is damaged "for life[.]" <u>Id.</u> Plaintiff also alleges that Dr. Vargo and other defendants have deliberately denied him the recommended relief ordered by Dr. Becker of medically needed shoes. <u>Id.</u> at ¶ 6.

Plaintiff's allegations and his summary judgment briefing show that the basis of his Eighth Amendment deliberate indifference claim is the failure of Dr. Vargo to follow Dr. Becker's orders regarding certain shoes, a carbon fiber insert, and a metatarsal pad to alleviate plaintiff's foot pain and to avoid surgery. Defendants do not challenge that plaintiff's Halux Valgus deformity in his left foot is a serious medical condition. Thus, the

10 - FINDINGS & RECOMMENDATION

question in this case is whether defendants possess the requisite culpable state of mind.

Initially, I recommend that defendants' motion be granted as to all defendants other than Dr. Vargo. Plaintiff fails to create an issue of fact regarding the personal participation by any of the other defendants in denying him the treatment prescribed by Dr. Becker.

As to Dr. Shelton, there is evidence of correspondence between Dr. Shelton and plaintiff in which Dr. Shelton informs plaintiff of various decisions made by OSP Health Services, the TLC Committee, and the Medical Services Committee. Pltf's Exh. 108 (Apr. 23, 2007 letter from Dr. Shelton to plaintiff indicating that health services was in the process of obtaining a carbon fiber plate and long arch support for plaintiff); Pltf's Exh. 109 (June 13, 2007 letter from Dr. Shelton to plaintiff in response to plaintiff's May 30, 2007 kyte regarding shoes and arch supports and plaintiff's need to purchase items from the clothing room and canteen); Pltf's Exh. 110 (June 20, 2007 letter from Dr. Shelton to plaintiff in response to plaintiff's June 15, 2007 kyte and informing plaintiff that TLC Committee discussed his case including "carbon fiber arch supports", and agreed that plaintiff could obtain adequate arch supports from the canteen); Unnumbered Pltf's Exh. (July 30, 2008 letter from Dr. Shelton to plaintiff regarding Medical Services Committee's decision to rescind authorization for carbon fiber insert because there were other reasonable medical alternatives).

None of the correspondence reveals that Dr. Shelton himself was involved in the actual decisions regarding the treatment plaintiff was prescribed or received. Plaintiff fails to create an

11 - FINDINGS & RECOMMENDATION

issue of fact regarding Dr. Shelton's role in actually denying plaintiff the medical treatment plaintiff complains about in this case. Being a conduit for information is not enough.

As to Randall and Graf, there is no evidence of their involvement in plaintiff's failure to receive the shoes/boots, metatarsal pad, or carbon fiber insert. Graf responded to some of plaintiff's grievances about footwear and arch supports by reminding plaintiff of the TLC Committee's decisions and what had previously been communicated to plaintiff. Pltf's Exh. 106. Randall was copied on the correspondence to plaintiff by Dr. Shelton. Pltf's Exhs. 108-110, and Pltf's Unnumbered Exh. following Exh. 110. Other documents containing Randall's name are after the date the Amended Complaint was filed and thus, are not relevant to the events at issue in the Amended Complaint. Notwithstanding the dates of those documents, however, they still fail to show that Randall personally participated in decisions regarding plaintiff's treatment. Pltf's Unnumbered Exh. (Jan. 17, 2007 grievance by plaintiff to OSP Superintendent Brian Belleque which indicates it was referred to Randall); Pltf's Unnumbered Exh. (Nov. 13, 2008 grievance by plaintiff to Dr. Shelton complaining about a number of items and noting that Randall had not answered plaintiff's kytes); Pltf's Unnumbered Exh. (Nov. 25, 2008 kyte from plaintiff to Randall about pain in toes and requesting authorization from Randall for a friend "on the outside" to purchase the stiff sole shoes plaintiff required; Randall responded that this was "worth a try.").

Finally, as to Dr. Becker, based on the allegations in the Amended Complaint and the summary judgment materials submitted by

12 - FINDINGS & RECOMMENDATION

plaintiff, plaintiff's claim does not appear to be that Dr. Becker failed in any way to prescribe what plaintiff believes to be appropriate treatment. Instead, I understand plaintiff's claim to be that Dr. Vargo refused to provide the treatment, in the forms of shoes, metatarsal pad, and carbon fiber insert, that Dr. Becker prescribed. Thus, I recommend that defendants' motion be granted as to Dr. Becker, Dr. Shelton, Graf, and Randall.

My reading of the record shows that Dr. Becker, an orthopedic physician, began his treatment of plaintiff in March 2004 by prescribing one of two things: (1) a carbon fiber insert with separate metatarsal pad, or (2) stiff or rigid sole shoes with separate metatarsal pad. Dr. Becker recommended the former treatment as ideal, but noted that the latter would "probably suffice."

The record indicates that at times, OSP health staff may have considered the carbon fiber insert, sometimes referred to as a carbon fiber plate, as the same item as the metatarsal pad. But, the physician orders make it clear that these were separate items. E.g., Attmt 1 to Becker Affid. at p. 2 (Mar. 4, 2004 progress note written by Dr. Becker stating "Rx is carbon fiber plate [left] shoe with metatarsal pad" and alternatively "stiff sole pair shoes with met pad"); Pltf's Exh. 1 (Dr. Becker's order dated March 4, 2004, listing "rigid sole shoe or any shoe with carbon fiber sole plate" separate from "metatarsal pad"); Attmt 1 to Becker Affid. at p. 5 (Sept. 29, 2006 order by Dr. Becker for "long arch support with metatarsal pad," and "carbon fiber plate").

The metatarsal pad was prescribed initially by Dr. Becker on March 4, 2004, and again by Dr. Becker on August 9, 2004. Dr.

13 - FINDINGS & RECOMMENDATION

Becker prescribed it a third time on September 29, 2006, this time as part of an arch support, but still separate from the carbon fiber plate. Plaintiff did not receive the metatarsal pad until August 2007, a delay of more than three years.

Defendants contend that the provision of hard sole work boots was adequate treatment for plaintiff's condition, and that he had access to pain medication if needed.

In July 2004, plaintiff was told that the TLC Committee had rejected the request for the metatarsal pad and recommended hard sole work boots instead. The TLC Committee decision from July 8, 2004, shows that the proposed treatment was a metatarsal pad, but that work boots had been recommended instead. There is no mention in the TLC Committee's memorandum of the carbon fiber insert or the prescription for stiff or rigid sole shoes.

Plaintiff received shoes on June 18, 2004, perhaps the stiff sole shoes recommended by Dr. Becker, although the record is not entirely clear. In an August 9, 2004 progress note, Dr. Becker described the shoes plaintiff was wearing as seamless soft leather toe box shoes with thick soles. This suggests that the shoes plaintiff received in June may have been the stiff or rigid sole shoes recommended by Dr. Becker. In response to plaintiff's complaint that these shoes hurt plaintiff's feet, Dr. Becker ordered New Balance extra-wide shoes.

The record is unclear if plaintiff ever received the work boots ordered by the TLC Committee[2], and even if he did, he did not

---

[2] I find nothing in the summary judgment record to show when, if ever, plaintiff received the hard sole work boots ordered by the TLC Committee/Dr. Vargo in July 2004, and ordered

14 - FINDINGS & RECOMMENDATION

receive the metatarsal pad with them. In September 2004, he inquired about the shoes and metatarsal pad Dr. Becker ordered. He was told that he had received the shoes in June, and that the TLC Committee had already denied the metatarsal pad. But, the shoes he received in June 2004 were not the New Balance shoes that Dr. Becker ordered in August 2004. The record does not show that plaintiff ever received those shoes. Instead, plaintiff was given an "OK" to purchase "wide" shoes at the canteen. A second order for work boots with hard soles was issued in November. In January 2005, he was told to obtain work boots through the clothing room. Later in January, he acknowledged receipt of Reebok shoes which he "willingly accepted" and stated fulfilled his medical need for shoes.

It is unclear if the Reebok shoes were a substitute for the New Balance shoes ordered in August by Dr. Becker. And, at this point, the record does not show that plaintiff ever received the hard sole work boots. Additionally, although plaintiff signed the acknowledgment that the Reebok shoes "fulfilled" his medical need for shoes, plaintiff still had not received a metatarsal pad. He continued to receive orders for it in 2006 and in early 2007, but he did not receive it until August 2007. In September 2006, he was told he could obtain the prescribed long arch support with metatarsal pad through the canteen, but the canteen does not carry

---

again in November 2004. However, in support of his motion for appointment of expert podiatrist, plaintiff states that he obtained a "non-modified institution work boot" from the prison clothing room. Mtn for Appt. of Expert Wit Podiatrist (#64). He does not indicate when he received the work boots and he further states that the work boots caused a "great deal of discomfort and pain" and caused problems when walking.

15 - FINDINGS & RECOMMENDATION

metatarsal pads. Pltf's Unnumbered Exh. (Oct. 31, 2008 kyte to canteen from plaintiff requesting metatarsal pad with response stating that canteen does not sell "anything like that").

In his affidavit, Dr. Becker states that the fact that he "recommended a carbon fiber metatarsal pad and instead hard sole work boots were ordered, is not medically significant because hard soled work books is one of the recommended courses of treatment for Mr. Romero's condition." Becker Affid. at ¶ 15. Dr. Vargo states that "proper fitting shoes like hard soled work boots will give relief." Vargo Affid. at ¶ 7.

The problem with Dr. Becker's statement is that the record does not support his description of having recommended a "carbon fiber metatarsal pad." As discussed above, the medical record shows that Dr. Becker ordered a carbon fiber insert or stiff/rigid sole shoes, and a metatarsal pad. The record shows that plaintiff was prescribed a carbon fiber insert and separate metatarsal pad, or stiff/rigid sole shoes and separate metatarsal pad. Even after plaintiff obtained the metatarsal pad in August 2007, Dr. Becker continued to prescribe a separate carbon fiber plate.

The record does not support equating the carbon fiber insert and metatarsal pad. Thus, Dr. Becker's suggestion that substituting the hard sole work boots without metatarsal pad, for the carbon fiber insert with metatarsal pad, was acceptable medical treatment for plaintiff's condition, is belied by his own medical records and plaintiff's medical record generally. At a minimum, a question of fact is raised.

Additionally, Dr. Vargo states that plaintiff has received a variety of prescription pain medications since 2001 that relieve

16 - FINDINGS & RECOMMENDATION

arthritic discomfort in addition to the symptoms they were prescribed to treat. Vargo Affid. at ¶ 13. Dr. Vargo suggests that access to these medications, combined with the provision of hard sole work boots, was sufficient medical treatment for plaintiff's condition. The problem with this argument, however, is that Dr. Becker did not prescribe these medications for plaintiff's foot deformity and the basis of plaintiff's claim is not a failure to provide pain medications for other conditions. Defendants may not absolve themselves of their constitutional duty to treat a serious medical condition by suggesting that medication prescribed for a separate condition suffices.

Defendants argue that plaintiff offers nothing other than his own opinion to contest defendants' position that the treatment he received was acceptable treatment for his condition, even though it was not the treatment plaintiff preferred. And, defendants note, even if plaintiff had an opinion from a physician on this issue, a difference of opinion does not support an Eighth Amendment deliberate indifference claim.

Defendants, however, fail to establish an absence of material fact on the question of deliberate indifference on this summary judgment record. The failure to provide the metatarsal pad for more than three years by itself raises questions about whether Dr. Vargo knew of and disregarded an excessive risk to plaintiff's health. The fact that different types of shoes and boots were ordered and not provided for several months or perhaps not at all, raises questions about whether the treatment undertaken by Dr. Vargo, in contrast to what Dr. Becker ordered, was medically unacceptable under the circumstances. As such, on this record, Dr.

17 - FINDINGS & RECOMMENDATION

Vargo fails to establish in the first instance an absence of material fact entitling Dr. Vargo to summary judgment.

Finally, plaintiff has separately moved for the appointment of an expert witness podiatrist. Federal Rule of Evidence 706 allows the court to appoint an expert witness on its own or on a party's motion. The court may exercise its discretion in favor of the appointment of an expert witness to assist the court in evaluating complex or confusing evidence. <u>Walker v. American Home Shield Long Term Disability Plan</u>, 180 F.3d 1065, 1071 (9th Cir. 1999); <u>McKinney v. Anderson</u>, 924 F.2d 1500, 1510 (9th Cir), <u>vacated on other grounds sub nom.</u>, <u>Helling v. McKinney</u>, 502 U.S. 903 (1991).

While the evidence in this case is not complex, I recommend that the court exercise its discretion in favor of appointing an expert podiatrist. Here, one Department of Corrections physician, Dr. Vargo, ordered treatment different from that prescribed by a specialist Department of Corrections physician, Dr. Becker. Although Dr. Becker's affidavit suggests that the treatment ordered by Dr. Vargo was medically acceptable, Dr. Becker's affidavit is undermined by his own medical records. Considering that the Department of Corrections physicians themselves appear to have disagreed on the proper course of treatment and that defendants' primary argument in support of summary judgment is that plaintiff has no evidence other than his own opinion that the treatment defendants provided him was not acceptable, appointment of an expert will assist the court at trial in resolving the claim.

## CONCLUSION

I recommend that defendants' motion for summary judgment (#55) be granted as to Dr. Becker, Dr. Shelton, Graff, and Randall, and

18 - FINDINGS & RECOMMENDATION

denied as to Dr. Vargo.  I recommend that plaintiff's motion for appointment of expert podiatrist (#64) be granted.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due July 10, 2009.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due July 24, 2009, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this   25th   day of  June       , 2009.


  /s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

19 - FINDINGS & RECOMMENDATION